STROUD, Judge.
 

 *288
 
 Defendant Omega Hodges ("defendant") appeals from the trial court's civil contempt commitment order entered 14 June 2016 and petitions for certiorari as to the trial court's order entered 17 June 2016. On appeal, defendant argues that the trial court erred by finding that he had the ability to comply with the child support order and purge condition because the trial court's findings were not supported by competent evidence. Because defendant timely appealed from the trial court's
 
 *289
 
 14 June 2016 order, the trial court was divested of jurisdiction to enter the 17 June 2016 order. Thus, for reasons explained in more detail below, we vacate the 17 June 2016 order and reverse the 14 June 2016 order.
 

 I. Facts
 

 Defendant entered into a voluntary child support order in 1987. On 23 November 2015, the Durham County Child Support Enforcement Office filed a motion for order to show cause on behalf of plaintiff Selema Alston
 
 [1]
 
 . The motion noted that defendant was in arrears of $7246.88 and that the last payment was received in July 2014. An order to appear and show cause was subsequently signed that same date, 23 November 2015.
 

 On 25 February 2016, a hearing was held, and the trial court inquired into defendant's current employment and medical conditions that may interfere with his ability to obtain and maintain employment. Defendant testified that he was currently unemployed and that he had last held employment in June 2014 at Church's Chicken, but it ended because of his disability. Defendant presented a letter dated for the previous day, 24 February 2016, from his primary care physician, Dr. Kristin Ito, describing defendant's medical issues. Defendant's counsel asked for a continuance in order to obtain a subpoena for Dr. Ito in order to verify the contents of the letter. The trial court granted the request.
 

 The hearing resumed on 14 June 2016. The transcript of that hearing has not been provided on appeal because the recordings were found to have no discernible audio, but a reconstruction of the testimony presented at that hearing is in the record. The reconstruction states the following:
 

 Reconstruction of testimony presented 14 June 2016:
 

 Dr. Eugenia Zimmerman practiced at Triangle [Orthopedic] Associates. She testified by telephone.
 

 Dr. Zimmerman evaluated [defendant's] condition on 31 October 2014. [Defendant] presented with shoulder pain, degeneration of the cervical intervertebral disc, and cervical myelopathy. He had no feeling in his
 
 *320
 
 hands and was unable to hold things or stand up for prolonged
 
 *290
 
 periods of time. As of the time of the visit, [defendant's] condition prevented him from maintaining gainful employment. When asked to consider whether [defendant] could hold a position such as greeter at Walmart if Walmart were willing to accommodate his medical condition, Dr. Zimmerman testified that the requirement of standing for extended periods of time would likely pose a problem. Surgery might have slowed the worsening of the condition, but could not have alleviated the problem. [Defendant] did not have medical insurance at the time of his visit.
 

 Dr. Kristin Ito had a general medical practice at Lincoln Community Health Center. She evaluated [defendant] on 24 February 2016. Dr. Ito also testified by telephone.
 

 Dr. Ito testified that her 24 February 2016 letter and notes were based largely on Dr. Zimmerman's previous diagnosis. When she saw [defendant], his condition had worsened. [Defendant] was in constant pain and took numerous medications that interfered with his ability to function. He was not able to maintain gainful employment. [Defendant] testified that he did not have feeling in his hands, that he had trouble standing, and that his medications made it hard for him to function. His last job had been at Church's Chicken in 2014. He had been able to work there for only five hours per week because of his medical condition. He was terminated from Church's and had not been able to perform even basic janitorial services since that time. [Defendant] had little education and had never held any type of work other than janitorial. He had applied for jobs, but had not been offered employment anywhere.
 

 [Defendant] lived with his parents. He had no income. He did not smoke or drink and relied on friends to drive him to appointments and court. He "could not remember" the last time he had any money. [Defendant] lived on food stamps and got his clothes from a local clothing closet. Only in 2016, he had gotten back on Medicaid and begun seeking medical treatment again.
 

 Dr. Ito's letter, dated 24 February 2016, notes that she saw defendant on that date as a follow up for his chronic neck, back, and shoulder
 
 *291
 
 pain. She explained his prior diagnosis through Triangle Orthopedics and noted that their evaluation found his issues were likely to progress and concluded that defendant "is not able to maintain gainful employment as a result of this disability." Dr. Ito referred defendant back to the orthopedic doctor for further treatment.
 

 DSS presented no evidence other than the records of defendant's missed support payments.
 

 On 14 June 2016, the same day as the hearing, the trial court signed and filed a "Commitment Order for Civil Contempt Child Support," directing the sheriff to take defendant into custody immediately and "remain in custody until he/she purges himself/herself of contempt by paying into the office of the Clerk of Superior Court" the sum of $1,000.00. This order is a form order, AOC-CV-603, Rev. 3/03. None of the boxes on the form are checked. The court order upon which contempt was based is not identified. All additions to the form are handwritten. The only blanks filled in are the county, Durham; the court file number; the defendant's name; the date; the trial judge's signature; and "Purge $1000.00 or serve 90 days" which appears in the section of the form for "additional findings." There are no findings of fact. The portion of the form at the bottom sets a hearing date for review on 19 July 2016.
 

 Defendant filed a motion to stay execution of judgment on 15 June 2016, alleging that a "written order" had not yet been filed regarding the 14 June 2016 hearing and arguing that defendant had no ability to comply with the judgment because he is "unemployed, on food stamps and other public assistance, without support from any friends or family (with the exception that his parents allow him to live with them rent free), and with a substantial disability that inhibits his ability to obtain and maintain employment." But defendant's counsel must have been aware that some sort of written order had
 
 *321
 
 been filed, since he also filed a notice of appeal on 15 June 2016 which specifically identified the 14 June 2016 order. Most likely he was aware the trial court intended to enter another order with detailed findings of fact and conclusions of law. Since we have no transcript of the hearing or rendition of the order, we have no way of knowing exactly what happened. In any event, defendant's motion to stay alleged that no "written order" had been entered, but in fact, a "written order" had been signed and filed on 14 June 2016. The trial court denied the motion to stay that same day.
 

 As noted above, defendant subsequently filed a notice of appeal on 15 June 2016 "from the final judgment of the Honorable Fred Battaglia, District Court Judge, entered on June 14, 2016 in the District Court of
 
 *292
 
 Durham County, which held defendant in contempt for failure to pay child support." The trial court entered a more detailed written order on contempt two days later, on 17 June 2016. In the 17 June 2016 order, the trial court concluded that defendant "does not have just cause for failing to complying [sic] with the prior Court orders and should be held in contempt of court." Defendant was found to be in contempt of court and the trial court ordered that he be "committed to the Durham County Jail for a term not less than 90 days and may be released upon a payment of $1,000.00 purge to be released to child support if paid."
 
 [2]
 
 An appellate entry was file stamped on 17 June 2016, and the trial court noted that defendant gave notice of appeal to this Court. On 26 January 2017, defendant filed a conditional petition for writ of certiorari asking this Court to permit review of the 17 June 2016 order. As explained in more detail below, we grant defendant's petition only to vacate the 17 June 2016 order because the trial court was divested of jurisdiction before it was entered.
 

 II. Discussion
 

 Generally, on appeal defendant contends that the trial court erred by finding that defendant had the ability to work, despite the undisputed evidence from both of his physicians that his medical condition made him incapable of gainful employment. Defendant also challenges the trial court's findings that defendant had access to funds from undefined family or friends, despite the absence of any evidence to support this finding. Defendant contends the trial court erred by finding that since defendant resides with his parents rent-free, this creates "in-kind" income that is available for him to pay his child support and purge payment, despite his lack of income or assets.
 

 DSS does not substantively refute defendant's arguments on appeal, other than to note that the trial court is the judge of the weight and credibility of the evidence-which is generally correct, if there is any evidence.
 

 *293
 
 In its second order, entered 17 June 2016, the trial court made detailed findings of fact. But since we must vacate the order, we will not address it in depth. Furthermore, before addressing any substantive arguments further, we must clarify the underlying procedural issues related to defendant's notice of appeal and the two written orders ultimately entered in this case: the 14 June 2016 form order and the later, more detailed 17 June 2016 order.
 

 a. Appeal of the 17 June 2016 Order
 

 As noted above, defendant filed a notice of appeal on 15 June 2016 from the trial court's Civil Commitment order entered on 14 June 1016, but the trial court also filed
 
 *322
 
 another order, based upon the same motion and hearing, with detailed findings and conclusions of law, on 17 June 2016. Although both parties' briefs treat the initial 14 June 2016 order as an oral rendition of the ruling and the 17 June 2016 order as the written order, we cannot ignore the fact that the 14 June 2016 order was written and entered. Rule 58 of the North Carolina Rules of Civil Procedure states: "[A] judgment is entered when it is reduced to writing, signed by the judge, and filed with the clerk of court." N.C. R. Civ. P. 58. The 14 June 2016 order has no language to indicate the trial court anticipated entry of another more detailed order, despite the absence of any findings of fact; on its face, it is a final order which addresses the only issue presented, which was whether defendant was in civil contempt of the prior child support order. " 'A final judgment is one which disposes of the cause as to all the parties, leaving nothing to be judicially determined between them in the trial court.' "
 
 Bradley v. Bradley
 
 , --- N.C. App. ----, ----,
 
 806 S.E.2d 58
 
 , 61 (2017) (quoting
 
 Duval v. OM Hospitality, LLC
 
 ,
 
 186 N.C. App. 390
 
 , 392,
 
 651 S.E.2d 261
 
 , 263 (2007) ).
 

 Since the 14 June 2016 order was "entered," defendant's notice of appeal filed on 15 June 2016 divested the trial court of jurisdiction.
 

 Whether a trial court had jurisdiction to enter an order is a question of law that we review
 
 de novo
 
 . An appellate court has the power to inquire into jurisdiction in a case before it at any time, even
 
 sua sponte
 
 .
 

 ....
 

 The power of a trial court to enter an order or take further action in a case following the filing of a notice of appeal by a party is enumerated in
 
 N.C. Gen. Stat. § 1-294
 
 , which states in relevant part: When an appeal is perfected as provided by this Article it stays all further proceedings
 
 *294
 
 in the court below upon the judgment appealed from, or upon the matter embraced therein, unless otherwise provided by the Rules of Appellate Procedure; but the court below may proceed upon any other matter included in the action and not affected by the judgment appealed from.
 

 According to well-established North Carolina law, once an appeal is perfected, the lower court is divested of jurisdiction. An appeal is not perfected until it is docketed in the appellate court, but when it is docketed, the perfection relates back to the time of notice of appeal, so any proceedings in the trial court after the notice of appeal are void for lack of jurisdiction.
 

 Ponder v. Ponder
 
 , --- N.C. App. ----, ----,
 
 786 S.E.2d 44
 
 , 47 (2016),
 
 appeal dismissed and disc. review denied
 
 ,
 
 369 N.C. 528
 
 ,
 
 797 S.E.2d 290
 
 (2017) (citations and quotation marks omitted).
 

 The 17 June 2016 order is void because the trial court lacked jurisdiction to enter it once defendant appealed the 14 June 2016 order. Defendant perfected his appeal by docketing it with this Court, and this perfection relates back to 15 June 2016.
 
 See
 

 France v. France
 
 ,
 
 209 N.C. App. 406
 
 , 410-11,
 
 705 S.E.2d 399
 
 , 404 (2011) ("Plaintiff appealed Judge Culler's first order on 13 November 2009.... Judge Culler's second order was entered on 18 December 2009, following a hearing that was held 11 December 2009. Plaintiff's appeal of Judge Culler's first order on 13 November 2009 divested the trial court of jurisdiction in the matter and jurisdiction transferred to this Court. Thus, Judge Culler's second order is a nullity because the trial court was without jurisdiction to hear the matter on 11 December 2009.... We therefore must vacate Judge Culler's second order." (Citations omitted)). Similarly, here, the trial court entered a written order on 14 June 2016. Although the order is clearly lacking substantive content, it is a written order that was signed and entered, as the file stamp indicates. And despite its lack of content, the order authorized the Durham County Sheriff to take immediate custody of defendant. We cannot overlook the 14 June 2016 order, as the parties' briefs do, and treat it as an oral rendition. Accordingly, we must vacate the 17 June 2016 order as void.
 

 b. 14 June 2016 Order
 

 Although the briefs primarily address the 17 June 2016 order, since it was the only order with any substantive content, defendant timely appealed from the 14 June
 
 *323
 
 2016 order. On appeal, defendant argues that the trial court erred in entering a contempt order and by finding that he
 
 *295
 
 had the ability to comply with the child support order and the purge condition. Defendant argues that this ultimate finding was not supported by competent evidence.
 

 We review orders for contempt to determine if the findings of fact support the conclusions of law: The standard of review we follow in a contempt proceeding is limited to determining whether there is competent evidence to support the findings of fact and whether the findings support the conclusions of law.
 

 Spears v. Spears
 
 , --- N.C. App. ----, ----,
 
 784 S.E.2d 485
 
 , 494 (2016) (citation and quotation marks omitted);
 
 see also
 

 Watson v. Watson
 
 ,
 
 187 N.C. App. 55
 
 , 64,
 
 652 S.E.2d 310
 
 , 317 (2007) ("The standard of review for contempt proceedings is limited to determining whether there is competent evidence to support the findings of fact and whether the findings support the conclusions of law. Findings of fact made by the judge in contempt proceedings are conclusive on appeal when supported by any competent evidence and are reviewable only for the purpose of passing upon their sufficiency to warrant the judgment. North Carolina's appellate courts are deferential to the trial courts in reviewing their findings of fact." (Citations and quotation marks omitted)).
 

 Under N.C. Gen. Stat. § 5A-21(a) (2015):
 

 Failure to comply with an order of a court is a continuing civil contempt as long as:
 

 (1) The order remains in force;
 

 (2) The purpose of the order may still be served by compliance with the order;
 

 (2a) The noncompliance by the person to whom the order is directed is willful; and
 

 (3) The person to whom the order is directed is able to comply with the order or is able to take reasonable measures that would enable the person to comply with the order.
 

 In this case, defendant argues that the trial court erred in finding that he had the present ability to comply with the child support order and that his noncompliance with the order was willful. The 14 June 2016 order has no findings of fact other than the ultimate finding of fact, which is part of the form language as follows: "[T]he party has sufficient means and ability to comply or take reasonable measures to comply."
 

 *296
 
 The trial court need not find detailed evidentiary facts but an order must have sufficient findings to support its conclusions of law and decretal. "There are two kinds of facts: Ultimate facts, and evidentiary facts. Ultimate facts are the final facts required to establish the plaintiff's cause of action or the defendant's defense; and evidentiary facts are those subsidiary facts required to prove the ultimate facts."
 
 Woodard v. Mordecai
 
 ,
 
 234 N.C. 463
 
 , 470,
 
 67 S.E.2d 639
 
 , 644 (1951). While a trial court need not make findings as to all of the evidence, it must make the required ultimate findings, and there must be evidence to support such findings.
 
 See, e.g.,
 

 In re H.J.A.
 
 ,
 
 223 N.C. App. 413
 
 , 416,
 
 735 S.E.2d 359
 
 , 362 (2012) ("Moreover, when a trial court is required to make findings of fact, it must make the findings of fact specially. The trial court must, through processes of logical reasoning, based on the evidentiary facts before it, find the ultimate facts essential to support the conclusions of law. The findings must be the specific ultimate facts sufficient for the appellate court to determine that the judgment is adequately supported by competent evidence." (Citations, quotation marks, and brackets omitted));
 
 Townson v. Townson
 
 ,
 
 26 N.C. App. 75
 
 , 76,
 
 214 S.E.2d 444
 
 , 445 (1975) ("[T]he trial court is required only to find the ultimate facts and need not include evidentiary or subsidiary facts required to procure the ultimate facts.").
 

 As noted above, there was no evidence to support the pre-printed ultimate finding of fact on the form order. If there were any dispute in the evidence, it would be appropriate for us to remand to the trial court for entry of an order with additional findings of fact to clarify its rationale for the ultimate finding and conclusions of law.
 
 [3]
 
 But
 
 *324
 
 we have carefully reviewed the record and the substantive issues raised on appeal, and we have determined that there is simply no evidence to support the required ultimate finding.
 

 Proceedings for civil contempt can be initiated in three different ways: (1) by the order of a judicial official directing the alleged contemnor to appear at a specified reasonable time and show cause why he should not be held in civil contempt; (2) by the notice of a judicial official that the alleged contemnor will be held in contempt unless he appears at a specified reasonable time and shows cause why he should not be held in contempt; or (3) by motion of an aggrieved party giving notice to the
 
 *297
 
 alleged contemnor to appear before the court for a hearing on whether the alleged contemnor should be held in civil contempt. Under the first two methods for initiating a show cause proceeding, the burden of proof is on the alleged contemnor. However, when an aggrieved party rather than a judicial official initiates a proceeding for civil contempt, the burden of proof is on the aggrieved party, because there has not been a judicial finding of probable cause.
 

 Moss v. Moss
 
 ,
 
 222 N.C. App. 75
 
 , 77,
 
 730 S.E.2d 203
 
 , 204-05 (2012) (citations, quotation marks, and brackets omitted).
 

 In the present case, the trial court entered an order to show cause, which shifted the burden of proof to defendant to show cause as to why he should not be held in contempt of court.
 
 See, e.g.,
 

 Gordon v. Gordon
 
 ,
 
 233 N.C. App. 477
 
 , 480,
 
 757 S.E.2d 351
 
 , 353 (2014) ("A show cause order in a civil contempt proceeding which is based on a sworn affidavit and a finding of probable cause by a judicial official shifts the burden of proof to the defendant to show why he should not be held in contempt. Here, there was a show cause order with a judicial finding of probable cause. Therefore, the burden was on plaintiff to show why he should not be held in contempt." (Citations and quotation marks omitted)). "The party alleged to be delinquent has the burden of proving either that he lacked the means to pay or that his failure to pay was not willful."
 
 Shumaker v. Shumaker
 
 ,
 
 137 N.C. App. 72
 
 , 76,
 
 527 S.E.2d 55
 
 , 57 (2000).
 

 And despite the fact that the burden to show cause shifts to the defendant, our case law indicates that the trial court cannot hold a defendant in contempt unless the court first has sufficient evidence to support a factual finding that the defendant had the ability to pay, in addition to all other required findings to support contempt.
 
 See, e.g.
 

 Carter v. Hill
 
 ,
 
 186 N.C. App. 464
 
 , 466,
 
 650 S.E.2d 843
 
 , 844 (2007) ("[T]he court also erred by failing to make appropriate findings of fact to support the entry of a civil contempt order.... Failure to comply with an order of the court is civil contempt only when the noncompliance is willful and the person to whom the order is directed is able to comply with the order or is able to take reasonable measures that would enable the person to comply with the order. Findings of fact on these particular elements are conspicuously absent from the trial court's contempt order in this case." (Citations, quotation marks, and brackets omitted));
 
 Frank v. Glanville
 
 ,
 
 45 N.C. App. 313
 
 , 316,
 
 262 S.E.2d 677
 
 , 679 (1980) ("It is not clear from the record in this case that defendant has the ability to comply with the
 
 *298
 
 contempt order, ever had the ability, or will ever be able to take reasonable measures that would enable him to comply. For that reason and because no finding of fact detailing defendant's ability to comply with the contempt order was made, this case is reversed and remanded[.]").
 

 Here, although the trial court issued an order to show cause on 25 November 2015, defendant met his burden to show cause as to why he should not be held in contempt, presenting evidence from two treating physicians that he is physically incapable of gainful employment. DSS presented no evidence and did not refute defendant's evidence at all. The trial court, in its 17 June 2016 order, found that there was no evidence that defendant is temporary or permanently disabled, but that is not the standard for ability to pay in this context. The question is whether defendant currently, at the time of the hearing,
 
 *325
 
 had ability "to comply with the order or is able to take reasonable measures that would enable the person to comply with the order." N.C. Gen. Stat. § 5A-21(a)(3). All of the evidence showed that defendant was at all relevant times physically incapable of employment. Aside from the medical evidence, the reconstructed evidence from the hearing showed that
 

 [Defendant] had little education and had never held any type of work other than janitorial. He had applied for jobs, but had not been offered employment anywhere.
 

 [Defendant] lived with his parents. He had no income. He did not smoke or drink and relied on friends to drive him to appointments and court. He "could not remember" the last time he had any money. [Defendant] lived on food stamps and got his clothes from a local clothing closet. Only in 2016, he had gotten back on Medicaid and begun seeking medical treatment again.
 

 Since there is no evidence to support the required findings of fact, we need not remand for additional findings of fact. Instead, we reverse the 14 June 2016 order, which contained no findings of fact or other substantive content.
 

 In conclusion, we note that it appears the trial court simply wanted to ensure that defendant could be immediately placed into custody at the conclusion of the 14 June 2016 hearing and used the form order to accomplish this result. The 17 June 2016 order is a detailed order with many findings of fact which took more time to prepare. We understand the trial court's dilemma. Since District Court judges in North Carolina have no staff to assist them in preparation of orders despite the urgent need for many orders each day, our judges have to find ways to get the
 
 *299
 
 work done. But we caution judges and counsel that a written, signed, and filed document which claims to be an order
 
 is
 
 an order, so it must include the elements required of an order. If that order resolves all disputed issues as to all parties, it is a final and appealable order. In some instances, a trial court may be able to enter a temporary order or to make it clear that the trial court's initial order is not a final order, and if that is the trial court's intent, it should be stated clearly in the temporary order. But here, we are bound by the record before us. Accordingly, we hold that the trial court's ultimate finding in the 14 June 2016 order that defendant "has sufficient means and ability to comply or take reasonable measures to comply" with the order is not supported by its other findings of fact, since there are none, nor is there any evidence to support the ultimate finding. The order's conclusion of law-that defendant was, therefore, in civil contempt-is likewise unsupported by the findings of fact.
 

 III. Conclusion
 

 For the reasons stated above, we vacate the 17 June 2016 order and reverse the 14 June 2016 order.
 

 VACATED AND REVERSED.
 

 Judges BRYANT and CALABRIA concur.
 

 [1]
 

 Plaintiff Sharon Brewer is the child's biological mother, and plaintiff Selema Alston was the child's caretaker. The child resided with both plaintiff Brewer and plaintiff Alston during her minority. Durham County filed motions on behalf of both women throughout this case, and we collectively refer to all of these parties as "plaintiffs" throughout this opinion for ease of reading.
 

 [2]
 

 We also note that the 17 June order is not consistent with the 14 June order which directed that defendant remain in custody
 
 until
 
 he purged contempt by paying $1,000.00. This would be the typical purge condition allowed by N.C. Gen. Stat. § 5A-21 (2015) and N.C. Gen. Stat. § 5A-22 (2015). The 17 June 2016 order directs that defendant both serve a minimum sentence of 90 days and pay $1,000.00 to purge his contempt. In other words, even if defendant paid $1,000.00 immediately, the order as written directs that he "be
 
 committed to the Durham County Jail for a term not less than 90 days
 
 and may be released upon a payment of $1,000.00 purge[.]" (Emphasis added). A fixed term of imprisonment is an appropriate sanction for criminal contempt, but not civil contempt. Even if he paid immediately, he would still remain in jail for 90 days. But since we reverse the first order and vacate the second, we will not address this further but simply note the inconsistency.
 

 [3]
 

 Although the trial court had no jurisdiction to enter the 17 June 2016 order, that order is helpful in our review since it shows what findings of fact the trial court intended to make in support of its order of contempt.