JASON RANDALL CLARK, PLAINTIFF v. SUSAN DAWN PEARSON GRAGG, DEFENDANT

No. COA04-200

(Filed 21 June 2005)

**1. Contempt— civil—child support—findings**

An order holding plaintiff in civil contempt for not complying with child support consent orders was remanded for further findings on willfulness and ability to pay.

**2. Appeal and Error— appeal bond—money judgment—civil contempt—child support**

Orders for the payment of child support are money judgments under N.C.G.S. § 1-289. The trial court had the authority to require an appeal bond where the court had held plaintiff in civil contempt for failure to pay child support and ordered a payment plan for the past due amount.

Appeal by plaintiff from orders entered 18 November 2003 and 4 December 2003 by Judge Robert M. Brady in Caldwell County District Court. Heard in the Court of Appeals 10 January 2005.

*W. C. Palmer, Attorney at Law, PLLC, by W. C. Palmer, for plaintiff-appellant.*

*No brief filed on behalf of defendant-appellee.*

GEER, Judge.

Plaintiff Jason Randall Clark appeals the order of the trial court holding him in civil contempt for failure to comply with prior orders requiring him to maintain health insurance coverage for his minor child and pay half of her uninsured medical, orthodontic, and dental bills. Plaintiff argues on appeal that the trial court erred by (1) holding him in civil contempt without finding that he had the ability to comply with the previous court orders and (2) requiring that he file a bond to stay the court's order pending appeal. We hold that the trial court did not err in requiring an appeal bond, but that the trial court's order fails to make sufficient findings regarding plaintiff's willfulness in failing to comply with the previous court orders. Accordingly, we reverse and remand for further proceedings.

## Facts

Plaintiff originally commenced this action on 16 December 1994 by filing a complaint against defendant Susan Dawn Pearson Gragg seeking visitation with his child. The parties entered into a consent judgment regarding the custody of the minor child on 19 December 1994. That judgment provided for joint custody, but specified that defendant would have sole care, custody, and control of the child subject to visitation by plaintiff. Additionally, the judgment ordered plaintiff (1) to pay all medical premiums for the child; (2) to be equally responsible for payment of the insurance deductible, dental expenses, and orthodontic expenses; and (3) to pay defendant $200.00 per month in child support. On 19 February 1996, the trial court entered a second consent order that set out requirements regarding the transfer of the child for visitation, ordered plaintiff to make all child support payments to the Caldwell County Clerk of Superior Court, and required plaintiff to supply a copy of his insurance card to the child's doctors.

On 25 September 2003, defendant filed a motion seeking an order holding plaintiff in contempt of the December 1994 and February 1996 orders. The motion stated that plaintiff had, in violation of those orders, failed to pay medical premiums for his child; failed to pay his share of medical, dental, and orthodontic expenses; and failed to provide his insurance card to the child's doctors. Plaintiff was served with an order to show cause and the trial court conducted an evidentiary hearing on 6 November 2003.

The court filed its order holding plaintiff in civil contempt on 14 November 2003. The court ordered: "The Plaintiff is in Civil Contempt

of Court and shall be incarcerated in the Caldwell County Jail indefinitely, but by and with his consent, he may purge himself from this Contempt by paying $2,000.00 into the Office of the Clerk of Superior Court of Caldwell County prior to his release." The order further provided that upon plaintiff's release, he was required to pay $100.00 per month until the remaining past-due amount of $1,612.44 was paid in full.

Plaintiff subsequently filed a timely notice of appeal. He also filed a motion to stay the court's order, asserting that "the Plaintiff has no means with which to comply with the Order." On 4 December 2003, the trial court entered an order staying commitment of plaintiff to jail pending appeal. The court, however, also ordered plaintiff to "post an Appeal Bond secured by sureties satisfactory to the Court that binds the Plaintiff and the sureties to pay the amount of Three Thousand Six Hundred Twelve and 44/100 Dollars ($3,612.44) in this case into the Office of the Clerk of Court of Superior Court of Caldwell County to be disbursed to the Defendant if and when the Court's judgment is affirmed on appeal." On 4 December 2003, plaintiff filed the required bond. He has also noticed appeal from the order requiring the bond.

I

[1] Plaintiff's first assignment of error challenges the trial court's entry of an order holding him in civil contempt on the grounds that "[t]he Court must find facts and the evidence must support such finding that the Plaintiff had the present ability *to* comply with the original support order. There is no such adequate finding and there is no evidence to support any such finding." In a civil contempt proceeding, the trial court must address a party's "ability to comply" in two separate respects.

First, in order to find a party in civil contempt, the court must find that the party acted willfully in failing to comply with the order at issue. *Sowers v. Toliver*, 150 N.C. App. 114, 118, 562 S.E.2d 593, 596 (2002). "Willfulness constitutes: (1) an ability to comply with the court order; and (2) a deliberate and intentional failure to do so." *Id.* Therefore, in order to address the requirement of willfulness, "the trial court must make findings as to the ability of the plaintiff to comply with the court order during the period when in default." *Id.* at 119, 562 S.E.2d at 596. *See also Goodson v. Goodson*, 32 N.C. App. 76, 80, 231 S.E.2d 178, 181 (1977) ("In order to hold a parent in contempt for failure to pay child support in accordance with a decree, the failure must be wilful. In order to find the failure wilful, there must be *par-*

*ticular findings* of the ability to pay during the period of delinquency." (emphasis added)).

Second, once the trial court has found that the party had the means to comply with the prior order and deliberately refused to do so, "the court may commit such [party] to jail for an indefinite term, that is, until he complies with the order." *Bennett v. Bennett*, 21 N.C. App. 390, 393-94, 204 S.E.2d 554, 556 (1974). At that point, however, the court must also find that the party possesses the means to avoid jail by complying with the terms specified by the contempt order. *Id.* at 394, 204 S.E.2d at 556. In other words, in a civil contempt case, if the trial court orders the party imprisoned unless he pays the full amount of any arrearages, then the court must find that the party has the present ability to pay the total outstanding amount. *See also McMiller v. McMiller*, 77 N.C. App. 808, 809, 336 S.E.2d 134, 135 (1985) ("[T]hese statutes require that a person have the present ability to comply with the conditions for purging the contempt before that person may be imprisoned for civil contempt.").

Although plaintiff's assignment of error and his brief are not as clear as we would prefer, it appears that plaintiff is arguing on appeal that the trial court failed to make adequate findings regarding plaintiff's willfulness in violating the consent orders.[1] Plaintiff does not include any specific argument that he could not pay the $2,000.00 that, according to the order, was required "by and with his consent" to purge him of contempt. Nor does he contend that he cannot comply with the requirement that he pay $100.00 per month until the remaining amount due is paid in full. We, therefore, have limited our consideration to the question whether the trial court made adequate findings of willfulness.

We agree that in holding plaintiff to be in civil contempt for failure to comply with the two consent orders, the trial court never made the findings necessary to establish that plaintiff's non-compliance was willful. Indeed, the court never actually found that plaintiff's non-compliance was "willful." Further, the trial court never specifically found that plaintiff had the means to comply with the orders during the period when he was in default. *See Mauney v. Mauney*, 268 N.C. 254, 257, 150 S.E.2d 391, 393 (1966) ("[T]his Court has required the trial courts to find as a fact that the defendant possessed the means to comply with orders of the court during the period when he was in default.").

---

1. Plaintiff repeatedly refers to his ability to comply with "the original support order," "the prior Consent Order," and "the prior order."

The only findings of fact relating to plaintiff's ability to pay include:

14. The Plaintiff is an able-bodied, 32 year old, who attended high school up to the tenth grade. He has no military background. His work experience includes running a Tenon machine in the furniture industry. The plaintiff has skills in the furniture industry, but prefers to work in landscaping or construction. The Plaintiff has worked odd-jobs for himself and for others. The Plaintiff has been paid in cash. The Plaintiff worked for 8 months last year as a brick mason for Jones Rock Mason, and earned $8.00 per hour and worked forty-hour weeks, with no overtime.

. . . .

16. The Court finds that the Plaintiff is like an ostrich, burying his head in the sand, in [that] he believes that if he does not see the minor child's medical bills, that he will not have to pay them. The Plaintiff believes ignorance is bliss.

. . . .

18. While [the] Court does not disbelieve that the Plaintiff would prefer to work at an outside job, when a child is in the equation, the Plaintiff has to do what is necessary for the child.

Our appellate courts have previously held that almost identical findings are insufficient, standing alone, to support the finding of willfulness necessary to hold a party in civil contempt.

In *Mauney*, 268 N.C. at 257-58, 150 S.E.2d at 394, our Supreme Court held that the following finding of fact was not a sufficient basis for the conclusion that the non-paying party's conduct was willful in the absence of a finding that defendant had in fact been able to make the required payments during the period in which he was in arrearage:

Judge Martin found that the defendant "is a healthy, able bodied man, 55 years old, presently employed in the leasing of golf carts and has been so employed for many months; that he owns and is the operator of a Thunderbird automobile; that he has not been in ill health or incapacitated since the date of [the] order [requiring payment of alimony] entered on the 5th day of October, 1964; that the defendant has the ability to earn good wages in that he is a trained and able salesman, and is experi-

enced in the restaurant business; and has been continuously employed since the 5th day of October, 1964; that since October 5, 1964, the defendant has not made any motion to modify or reduce the support payments."

*Id.* at 255, 150 S.E.2d at 392. Likewise, in *Hodges v. Hodges*, 64 N.C. App. 550, 553, 307 S.E.2d 575, 577 (1983), this Court reversed an order for civil contempt because

[o]ur Supreme Court has held that a trial court's findings that a defendant was healthy and able-bodied, had been and was presently employed, had not been in ill-health or incapacitated, and had the ability to earn good wages, without finding that defendant presently had the means to comply, do not support confinement in jail for contempt.

*Id. See also Yow v. Yow*, 243 N.C. 79, 84, 89 S.E.2d 867, 871-72 (1955) (setting aside civil contempt decree when the trial court found only that the defendant was employed as a manager of a grocery and did not specifically find that the defendant possessed the means to comply with the prior orders during the period that he was in default).

The trial court, however, did include in its conclusions of law a finding that "the Plaintiff has the present ability to comply *with at least a portion* of the Orders of this Court." (Emphasis added.) Even if we construe this finding to refer to plaintiff's ability to comply with the prior consent judgments and not as support for the court's requiring payment of $2,000.00, it is not sufficient.[2] This Court has held that a finding of fact that a party has had the ability to pay as ordered "justif[ies] a conclusion of law that defendant's violation of the support order was willful . . . ." *McMiller*, 77 N.C. App. at 809, 336 S.E.2d at 135. In this case, however, the trial court found only that plaintiff had the ability to pay "a portion" of the prior orders. In *Green v. Green*, 130 N.C. 578, 578-79, 41 S.E. 784, 785 (1902), our Supreme Court held that such a finding is insufficient to support an order of civil contempt. *Id.* (holding that "[c]learly" a finding of fact that " 'defendant could have paid at least a portion of said money, as provided in said order' " could not support an order of contempt based on a failure to pay alimony).

---

2. As explained above, the trial court was also required to make findings of fact regarding plaintiff's ability to make the payment necessary to purge himself of contempt. The most reasonable reading of this finding is that the trial court was determining that plaintiff had the ability to pay a portion of the arrearage in the amount of $2,000.00.

**CLARK v. GRAGG**

[171 N.C. App. 120 (2005)]

Accordingly, we must reverse the trial court's order and remand for further findings of fact. The trial court must make specific findings addressing the willfulness of plaintiff's non-compliance with the prior consent orders, including findings regarding plaintiff's ability to pay the amounts provided under those prior orders during the period that he was in default.

II

**[2]** Plaintiff also assigns error to the trial court's order requiring that he file an appeal bond. Plaintiff does not argue that he lacked the ability to comply with the requirement to post a bond; indeed, he did comply. Instead, he contends that the General Statutes do not provide for a bond under the circumstances of this case. Plaintiff has overlooked N.C. Gen. Stat. § 1-289 (2003).

Under N.C. Gen. Stat. § 1-289, no judgment directing the payment of money is stayed pending an appeal unless a bond is posted. That statute provides in pertinent part:

(a) If the appeal is from a judgment directing the payment of money, it does not stay the execution of the judgment unless a written undertaking is executed on the part of the appellant, by one or more sureties, to the effect that if the judgment appealed from, or any part thereof, is affirmed, or the appeal is dismissed, the appellant will pay the amount directed to be paid by the judgment, or the part of such amount as to which the judgment shall be affirmed, if affirmed only in part, and all damages which shall be awarded against the appellant upon the appeal, except as provided in subsection (b) of this section.

Although plaintiff complains that the trial court ordered the bond *ex mero motu* in response to his motion for a stay, the statute, by its plain language, conditions a stay upon the posting of a bond.

As this Court has previously observed, "[o]ur courts have construed orders for the payment of alimony, alimony *pendente lite*, child support, and counsel fees to be money judgments under G.S. 1-289." *Berger v. Berger*, 67 N.C. App. 591, 600, 313 S.E.2d 825, 831, *disc. review denied*, 311 N.C. 303, 317 S.E.2d 678 (1984). *See also Faught v. Faught*, 50 N.C. App. 635, 639, 274 S.E.2d 883, 886 (1981) (holding that an "order requiring the payment of alimony is a 'judgment directing the payment of money'" under N.C. Gen. Stat. § 1-289(a) and, therefore, the trial court could require the posting of a bond). As part of its decision below, the trial court determined that

plaintiff owed defendant $3,612.44 under the consent judgments. The order in this case then sets out a payment plan with plaintiff to immediately pay $2,000.00 towards his arrearages and $100.00 per month thereafter until the remaining past-due amount of $1,612.44 is paid in full. Under N.C. Gen. Stat. § 1-289(a), the trial court had authority to order the posting of a bond as security for payment of those amounts. We, therefore, overrule this assignment of error.

Reversed and remanded.

Chief Judge MARTIN and Judge CALABRIA concur.