IN THE SUPREME COURT OF NORTH CAROLINA

No. 255A19

Filed 20 November 2020

IN THE MATTER OF: K.H.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 28 March 2019 by Judge Christy E. Wilhelm in District Court, Cabarrus County. Heard in the Supreme Court on 2 September 2020.

*Austin "Dutch" Entwistle III for petitioner-appellee Cabarrus County Department of Social Services.*

*Daniel E. Peterson for appellee Guardian ad Litem.*

*Anné C. Wright for respondent-appellant mother.*

HUDSON, Justice.

In 2017 a sixteen-year-old mother and her nine-month-old baby were taken into custody by the Cabarrus County Department of Social Services (DSS) and placed in the same foster home. After six months together, the child was moved to a different foster home apart from her mother. Less than eight months later, DSS filed a motion to terminate respondent-mother's parental rights to her child. Here, we conclude that a parent and child must be living apart from each other for more than twelve months prior to the filing of a motion to terminate parental rights in order for grounds for termination to exist under N.C.G.S. § 7B-1111(a)(2). Furthermore, the factual findings the trial court made here were insufficient to support the termination of the

mother's parental rights under either N.C.G.S. § 7B-1111(a)(3) or (6). Accordingly, we reverse the trial court's order terminating respondent-mother's parental rights.

## I. Factual and Procedural History

In March of 2017, respondent was only sixteen years old and had a nine-month-old daughter named Kaitlyn.[1] At the time, DSS received a report that respondent's father punched her in the face. It was also reported to DSS that respondent abused drugs, left Kaitlyn in the care of strangers, and had attempted to poison her family. On 5 April 2017, DSS filed a petition alleging that Kaitlyn was a neglected and dependent juvenile. That same day, DSS was granted nonsecure custody of both respondent and Kaitlyn.

Initially, respondent and Kaitlyn were placed in separate foster homes. Kaitlyn was adjudicated to be a neglected and dependent juvenile by an order filed on 8 June 2017 and the trial court determined that the primary permanent plan for Kaitlyn would be reunification with a secondary plan of guardianship.

The next day, 9 June 2017, respondent and Kaitlyn were placed in the same foster home. They remained together until 19 December 2017 when Kaitlyn was moved to a placement apart from respondent after respondent was caught with cigarettes and marijuana stems were found in a shoebox under her bed. Over the course of the next several months, respondent's progress was turbulent, respondent

---

[1] A pseudonym is used to protect the identity of the juvenile child and for ease of reading.

was moved between multiple placements, and ultimately the primary permanent plan for Kaitlyn was changed to adoption with a secondary plan of reunification.

On 8 August 2018, DSS filed a motion to terminate the parental rights of Kaitlyn's parents (TPR motion) alleging that termination was appropriate under N.C.G.S. § 7B-1111(a)(1)–(3), (6), and (7). A hearing on the motion was held on 25 February 2019 and 27 February 2019. On 28 March 2019, the trial court entered an order terminating respondent's parental rights pursuant to N.C.G.S. § 7B-1111(a)(2), (3), and (6) (TPR order). Respondent filed a notice of appeal on 10 April 2019.

## II.    Standard of Review

Proceedings to terminate parental rights consist of an adjudicatory stage and a dispositional stage. N.C.G.S. §§ 7B-1109, -1110 (2019). At the adjudicatory stage, the petitioner bears the burden "of proving by 'clear, cogent, and convincing evidence' that one or more grounds for termination exist under section 7B-1111(a) of the North Carolina General Statutes." *In re Z.A.M.*, 374 N.C. 88, 94 (2020) (citing N.C.G.S. § 7B-1109(f) (2019)). "We review a trial court's adjudication under N.C.G.S. § 7B-1109 'to determine whether the findings are supported by clear, cogent and convincing evidence and the findings support the conclusions of law.' The trial court's conclusions of law are reviewable de novo on appeal." *Id.* (citation omitted).

## III.  Analysis

### A.  N.C.G.S. § 7B-1111(a)(2)

In the TPR order, the trial court found that grounds for termination existed under N.C.G.S. § 7B-1111(a)(2), which provides as follows:

> The parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile.

N.C.G.S. § 7B-1111(a)(2) (2019).

As the Court has previously explained, "[t]ermination under this ground requires the trial court to perform a two-step analysis where it must determine by clear, cogent, and convincing evidence whether (1) a child has been willfully left by the parent in foster care or placement outside the home for over twelve months, and (2) the parent has not made reasonable progress under the circumstances to correct the conditions which led to the removal of the child." *In re Z.A.M.*, 374 N.C. at 95–96 (citing *In re O.C.*, 171 N.C. App. 457, 464–65, *disc. review denied*, 360 N.C. 64 (2005)). Under the first step, "the twelve-month period begins when a child is left in foster care or placement outside the home pursuant to a court order, and ends when the motion or petition for termination of parental rights is filed." *In re J.G.B.*, 177 N.C. App. 375, 383 (2006). "Where the twelve-month threshold does not expire before the

motion or petition is filed, a termination on the basis of N.C.G.S. § 7B-1111(a)(2) cannot be sustained." *Id.*

The time period a juvenile is left in foster care or placement outside the home is distinct from the time period a trial court considers in evaluating whether the parent has made reasonable progress in correcting the conditions that led to the juvenile's removal. *In re J.S.*, 374 N.C. 811, 815 (2020) ("[A]n adjudication under N.C.G.S. § 7B-1111(a)(2) requires that a child be left in foster care or placement outside the home pursuant to a court order for more than a year at the time the petition to terminate parental rights is filed. This is in contrast to the nature and extent of the parent's *reasonable progress*, which is evaluated for the duration leading up to the hearing on the motion or petition to terminate parental rights." (cleaned up) (emphasis in original)). In the TPR order, the trial court found that "[t]he juvenile has been in care for approximately 13 months" and considered respondent's conduct up until the date of the termination hearing in February 2019. It is unclear which thirteen months the trial court considered when calculating how long Kaitlyn had been in foster care and whether the trial court considered the months between the filing of the TPR motion and the termination hearing. The trial court's consideration of respondent's conduct up until the termination hearing was relevant to its consideration of respondent's reasonable progress but should not have been considered in its calculation of how long Kaitlyn had been left in foster care or

placement outside the home. We are unable to determine from the TPR order how the trial court calculated the relevant time period.[2]

The issue we are asked to consider is how long Kaitlyn was "left in foster care or placement outside the home" and thus whether the statutory twelve-month period elapsed.[3] Importantly, this case presents a rare circumstance in which respondent was also a minor in DSS custody. If the relevant time period began when Kaitlyn was put into nonsecure custody on 5 April 2017 and ran continuously until 8 August 2018 when DSS filed the TPR motion, more than twelve months had elapsed, and we would then analyze whether the trial court's findings of fact were supported by clear, cogent, and convincing evidence that respondent "willfully" left Kaitlyn in the placement for that period of time. *See* N.C.G.S. §§ 7B-1109(f), -1111(a)(2). However, if the relevant time period was suspended during the time Kaitlyn and respondent lived together in the foster home from 9 June 2017 to 19 December 2017, Kaitlyn had only been "left in foster care or placement outside the home" for approximately ten months in total,[4]

---

[2] Although the TPR order does not specify which time period it utilized for this part of the analysis, DSS argued in its brief to this Court that the trial court "properly considered evidence ranging from 5 April 2017, when the trial court placed Kaitlyn in [DSS]'s custody, until 25 February 2019 when the trial court held a hearing on [DSS]'s motion to terminate." As explained, this time period cannot satisfy the statutory requirement because almost half of it elapsed after the TPR motion was filed.

[3] The parties do not dispute that Kaitlyn was placed in foster care "pursuant to a court order." *In re J.G.B.*, 177 N.C. App. 375, 383 (2006); *see also In re A.C.F.*, 176 N.C. App. 520, 525–26 (2006) ("[W]e conclude the statute refers only to circumstances where a court has entered *a court order* requiring that a child be in foster care or other placement outside the home."). Kaitlyn was placed under a nonsecure custody order on 5 April 2017.

[4] Kaitlyn and respondent were separated from 5 April 2017 through 9 June 2017 and then again from 19 December 2017 until 8 August 2018.

and a termination of respondent's parental rights under subsection (a)(2) could not be sustained. *In re J.G.B.*, 177 N.C. App. at 383.

The General Assembly's stated purpose with respect to the termination of parental rights is "to provide judicial procedures for terminating the legal relationship between a juvenile and the juvenile's biological or legal parents when the parents have demonstrated that they will not provide the degree of care which promotes the healthy and orderly physical and emotional well-being of the juvenile." N.C.G.S. § 7B-1100(1) (2019).

Our appellate courts have previously explained that the purpose of the twelve-month requirement under N.C.G.S. § 7B-1111(a)(2) is to "provide[ ] parents with at least twelve months' notice to correct the conditions which led to the removal of their children before being made to respond to a pleading seeking the termination of his or her parental rights." *In re A.C.F.*, 176 N.C. App. at 527. This requirement "gives full support to the State's interests in preserving the family, while keeping in place a legislatively-established time frame for moving to termination if a child's return home proves untenable." *Id.* (citing N.C.G.S. § 7B-1100 (2003)).

We apply the law with this purpose in mind. The statute requires that the parent have "willfully left the juvenile *in foster care or placement outside the home* for more than 12 months." N.C.G.S. § 7B-1111(a)(2) (emphasis added). Typically, when a child is placed in foster care he or she is removed from the parents' home and placed elsewhere. *See* N.C.G.S. § 131D-10.2(9) (2019) (" 'Foster care' means the continuing

provision of the essentials of daily living on a 24-hour basis for dependent, neglected, abused, abandoned, destitute, orphaned, undisciplined or delinquent children or other children who, due to similar problems of behavior or family conditions, *are living apart from their parents, relatives, or guardians* in a family foster home or residential child-care facility." (emphasis added)). Thus, the plain meaning of the term "foster care" presumes that the child has been physically separated and is living apart from his or her parents. Likewise, the phrase "placement outside the home" connotes a separation of the parent and child where the child lives in a home apart from the parent.

In the case of a minor parent, interpreting "foster care or placement outside the home" to require a physical separation of the parent and juvenile fulfills the legislature's purpose of requiring that "more than 12 months" pass between the time a juvenile is left in foster care and the time a motion or petition for termination may be filed. As we explained above, this time period "provides parents with at least twelve months' notice to correct the conditions which led to the removal of their children[.]" *In re A.C.F.*, 176 N.C. App. at 527. It is unlikely that a parent— particularly a minor parent—would be on notice that his or her child has been "removed" from the home or that a court might find that he or she "willfully left" the child in foster care during the period of time when the parent and child were living in the same foster home. Requiring that the minor parent and juvenile live separately for at least twelve months prior to the filing of a motion or petition for termination

provides the notice the legislature intended to the parent that he or she must correct the conditions that led to the child's removal.

Here, Kaitlyn and respondent were placed in the same foster home on 9 June 2017. We conclude that as of that date Kaitlyn was not in a living situation upon which the legislature intended to base the termination of respondent's parental rights under N.C.G.S. § 7B-1111(a)(2). To the contrary, reading the statute as a whole and affording the words their plain meaning, we conclude that grounds for termination exist under subsection (a)(2) only when the juvenile has actually lived apart from the parent for more than twelve months. Therefore, we conclude that the months that Kaitlyn and respondent lived together in the same foster home from 9 June 2017 to 19 December 2017 cannot count towards the requisite twelve-month separation under N.C.G.S. § 7B-1111(a)(2). When DSS filed the TPR motion on 8 August 2018, Kaitlyn had only been "left in foster care or placement outside the home" for approximately ten months. Because the statutorily required twelve months had not accrued, termination on the basis of this ground cannot be sustained. *See In re J.G.B.*, 177 N.C. App. at 383 ("Where the twelve-month threshold does not expire before the motion or petition is filed, a termination on the basis of N.C.G.S. § 7B–1111(a)(2) cannot be sustained."). Accordingly, we reverse the trial court on this issue.

**B. N.C.G.S. § 7B-1111(a)(3)**

The trial court also found that grounds for termination of respondent's parental rights existed under N.C.G.S. § 7B-1111(a)(3), which provides as follows:

> The juvenile has been placed in the custody of a county department of social services, a licensed child-placing agency, a child-caring institution, or a foster home, and the parent has for a continuous period of six months immediately preceding the filing of the petition or motion willfully failed to pay a reasonable portion of the cost of care for the juvenile although physically and financially able to do so.

N.C.G.S. § 7B-1111(a)(3).

The motion to terminate respondent's parental rights was filed on 8 August 2018. Therefore, the relevant six-month period of time during which the trial court must determine whether respondent was able to pay a reasonable portion of the cost of Kaitlyn's care but failed to do so was from 8 February 2018 to 8 August 2018.

In the TPR order, the trial court made factual findings that respondent "worked at Shoe Show as well as Cook Out in 2018 and has not paid any monies towards the cost of care for the juvenile"; that "at various points in time, [respondent] was employed, although that employment was part-time"; that "[respondent] is physically and financially able to pay a reasonable portion of the child's care, and thus has the ability to pay an amount greater than zero"; that "[respondent] has [not] made a significant contribution towards the cost of care"; and that "[t]he total cost of care for [Kaitlyn] through June 2018 is $14,170.35."

However, none of these findings—nor any others related to this ground for termination—address the specific, relevant six-month time period from 8 February 2018 to 8 August 2018. Therefore, we conclude that the trial court's findings of fact are insufficient to support its conclusion of law that there were grounds to terminate respondent's parental rights under N.C.G.S. § 7B-1111(a)(3), which specifically requires that "the parent has for a *continuous period of six months immediately preceding the filing of the petition or motion* willfully failed to pay a reasonable portion of the cost of care for the juvenile although physically and financially able to do so." N.C.G.S. § 7B-1111(a)(3) (emphasis added). Accordingly, we reverse the trial court on this issue.

### C. N.C.G.S. § 7B-1111(a)(6)

Lastly, the trial court found that grounds for termination of respondent's parental rights existed under N.C.G.S. § 7B-1111(a)(6), which provides as follows:

> That the parent is incapable of providing for the proper care and supervision of the juvenile, such that the juvenile is a dependent juvenile within the meaning of G.S. 7B-101, and that there is a reasonable probability that the incapability will continue for the foreseeable future. Incapability under this subdivision may be the result of substance abuse, intellectual disability, mental illness, organic brain syndrome, or any other cause or condition that renders the parent unable or unavailable to parent the juvenile and the parent lacks an appropriate alternative child care arrangement.

N.C.G.S. § 1111(a)(6). The trial court failed to make any finding in the TPR order that addressed whether respondent had an appropriate alternative child care

-11-

arrangement. Therefore, there are insufficient findings of fact to support the trial court's conclusion of law that there were grounds to terminate respondent's parental rights under N.C.G.S. § 7B-1111(a)(6). Accordingly, we reverse the trial court on this issue.

## IV.    Conclusion

We conclude that Kaitlyn was not "left in foster care or placement outside the home for more than 12 months" and therefore that termination of respondent's parental rights under N.C.G.S. § 7B-1111(a)(2) cannot be sustained. Furthermore, the trial court made insufficient findings of fact to support its conclusions of law that grounds to terminate respondent's parental rights existed under N.C.G.S. § 7B-1111(a)(3) and (6). Accordingly, we reverse the order terminating respondent's parental rights.[5]

REVERSED.

---

[5] We note that in an adjudicatory hearing on the termination of parental rights all findings of fact must be based on "clear, cogent, and convincing evidence." N.C.G.S. § 7B-1109(f) (2019). We do not find such evidence in the record here that could support findings of fact necessary to conclude that respondent-mother's parental rights could be terminated under N.C.G.S. § 7B-1111(a)(2), (3), and (6). Thus, we conclude that the proper disposition is to reverse rather than remand.

Justice ERVIN, concurring, in part, and dissenting, in part.

I agree with the Court's determinations that the trial court erred by concluding that grounds exist to support the termination of respondent-mother's parental rights in Kaitlyn for failure to make reasonable progress toward correcting the conditions that led to Kaitlyn's removal from her home pursuant to N.C.G.S. § 7B-1111(a)(2), failure to pay a reasonable portion of the cost of Kaitlyn's care following her removal from the home pursuant to N.C.G.S. § 7B-1111(a)(3), and incapability pursuant to N.C.G.S. § 7B-1111(a)(6). I also agree that the trial court's decision that respondent-mother's parental rights in Kaitlyn were subject to termination pursuant to N.C.G.S. § 7B-1111(a)(2) should be reversed given the absence of any evidence tending to show that respondent-mother "willfully left the juvenile in foster care or placement outside the home for more than [twelve] months." I am, however, unable to join those portions of the Court's opinion reversing, rather than remanding, the trial court's decision that respondent-mother's parental rights in Kaitlyn were subject to termination pursuant to N.C.G.S. § 7B-1111(a)(3) and N.C.G.S. § 7B-1111(a)(6). As a result, I concur in the Court's decision, in part, and dissent from that decision, in part.

As the Court notes, the trial court erred by determining that respondent-mother's parental rights in Kaitlyn were subject to termination pursuant to N.C.G.S. § 7B-1111(a)(3) given its failure to make sufficient findings of fact to establish that respondent-mother failed to pay a reasonable portion of the cost of the care that

Kaitlyn received following her removal from the home during the six month period immediately preceding the filing of the DSS termination motion and pursuant to N.C.G.S. § 7B-1111(a)(6) given the trial court's failure to make sufficient findings of fact to establish that respondent-mother lacked an alternative plan of care for Kaitlyn. Having made that set of determinations, however, I believe that the Court should next address the issue of what remedy should be provided in order to rectify the trial court's errors. The Court has not, however, engaged in the sort of evidentiary analysis that I believe to be appropriate and has, instead, simply reversed the trial court's determination with respect to the grounds for termination set out in N.C.G.S. § 7B-1111(a)(3) and N.C.G.S. § 7B-1111(a)(6) without further analysis.

As a general proposition, a reversal represents a proper remedy on appeal in the event that the record evidence is "too scant" to support the trial court's decision, *State v. Greene*, 255 N.C. App. 780, 783, 806 S.E.2d 343, 345 (2017), while a remand is appropriate in the event that, even if the trial court's required findings of fact are defective, the record contains sufficient evidence to permit the trial court to have reached the result that it deemed appropriate in the event that proper findings had been made. *See, e.g., In re N.B.*, 200 N.C. App. 773, 779, 688 S.E.2d 713, 717 (2009) (remanding a termination of parental rights case to the trial court for further findings of fact on the grounds that "[t]he trial court . . . [did] not make any findings of fact which directly address[ed] whether [the respondent] lacked an appropriate alternative childcare arrangement"); *Watts v. Borg Warner Auto., Inc.*, 171 N.C. App.

1, 5, 613 S.E.2d 715, 719 (remanding a worker's compensation order which lacked necessary findings to the Industrial Commission for further proceedings given that "[s]pecific findings on crucial issues are necessary if the reviewing court is to ascertain whether the findings of fact are supported by competent evidence and whether the findings support the conclusion of law"), *aff'd*, 360 N.C. 169, 622 S.E.2d 492 (2005); *Lawton v. County of Durham*, 85 N.C. App. 589, 592, 355 S.E.2d 158, 160 (1987) (stating that, "[w]here the findings are insufficient to enable the court to determine the rights of the parties, the case must be remanded . . . for proper findings of fact"); *Barnes v. O'Berry Center*, 55 N.C. App. 244, 247, 284 S.E.2d 716, 718 (1981) (vacating and remanding a worker's compensation order "for more definitive findings and conclusions based on the evidence in the present record").[1] Thus, in identifying the proper remedy for the trial court's erroneous decision to find that respondent-mother's parental rights in Kaitlyn were subject to termination pursuant to N.C.G.S. § 7B-1111(a)(3) and N.C.G.S. § 7B-1111(a)(6), the ultimate issue that we must resolve is whether the record contained sufficient evidence to support the result that the trial court originally reached in the event that proper findings had been made.

---

[1] A trial court is, of course, entitled, in the exercise of its discretion, to receive and consider additional evidence upon remand, *see In re S.M.L.*, 846 S.E.2d 790, 802 (N.C. Ct. App. 2020) (stating that, "[o]n remand, . . . the trial court may," "in its discretion," "hold an additional hearing and consider additional evidence regarding the allegation of neglect"), unless the appellate courts either explicitly mandate or prohibit the taking of such an action, *see Robbins v. Robbins*, 240 N.C. App. 386, 407–08, 770 S.E.2d 723, 735 (2015) (stating that "[o]n remand the trial court shall, if requested by either party, consider additional evidence and arguments" regarding the marital distribution scheme).

After a careful examination of the record, I am persuaded that the complete reversal of the trial court's order required by the Court's decision is unwarranted given that "the trial court may be able to make more specific findings," *Cty. of Durham ex rel. Wilson v. Burnette*, 262 N.C. App. 17, 32, 821 S.E.2d 840, 852 (2018) (citing *Clark v. Gragg*, 171 N.C. App. 120, 126, 614 S.E.2d 356, 360 (2005)), *aff'd*, 372 N.C. 64, 824 S.E.2d 397 (2019), that support a determination that respondent-mother's parental rights in Kaitlyn were subject to termination pursuant to N.C.G.S. § 7B-1111(a)(3) and N.C.G.S. § 7B-1111(a)(6). More specifically, the record developed before the trial court indicates that respondent-mother failed to make any contribution toward the cost of the care that Kaitlyn received between 8 February 2018 and 8 August 2018, which is the relevant six-month period preceding the filing of the termination petition for purposes of determining whether respondent-mother's parental rights in Kaitlyn are subject to termination pursuant to N.C.G.S. § 7B-1111(a)(3). In addition, the record contains evidence tending to show that, at some point between "late 2017" and 8 August 2018, respondent-mother was employed at a shoe store, that she did not work there for "long at all," and that she was terminated from that employment "due to her attendance." Finally, the record reflects that respondent-mother did not suffer from any physical or other health-related limitations that precluded her from earning sufficient income to allow her to make a payment in excess of zero toward the cost of Kaitlyn's care. *See, e.g., In re J.M.*, 373 N.C. 352, 359, 838 S.E.2d 173, 178 (2020) (affirming the trial court's conclusion that

the respondent had failed to pay a reasonable portion of the cost of her children's care while they were in DSS custody based upon a determination that the respondent "was working at a . . . restaurant at the beginning of the six-month period but quit the job of her own accord"); *In re Tate*, 67 N.C. App. 89, 95, 312 S.E.2d 535, 539–40 (1984) (affirming the trial court's conclusion that the respondent failed to pay a reasonable portion of the cost of foster care for the child based upon determinations that, while the respondent was "an able-bodied woman capable of working," she had quit multiple jobs during the child's placement in foster care, with at least one of these resignations having stemmed from the respondent's lack of enthusiasm for working on weekends); *In re Bradley*, 57 N.C. App. 475, 478–79, 291 S.E.2d 800, 802 (1982) (affirming the trial court's determination that the respondent, a prisoner, had failed to pay a reasonable portion of the cost of care for the child given that the respondent had been terminated from a work-release program "for having returned therefrom in a highly intoxicated condition" and holding that, where "the parent had an opportunity to provide for some portion of the cost of care of the child, and forfeits that opportunity by his or her own misconduct, such parent will not be heard to assert that he or she has no ability or means to contribute to the child's care and is therefore excused from contributing any amount").

Assuming, without in any way deciding, that the record is insufficient to establish precisely when respondent-mother left the shoe store's employment, I believe that the trial court could have reasonably concluded that, except for

respondent-mother's failure to pay proper attention to her work-related responsibilities, she would have been employed and able to make a contribution in an amount in excess of zero toward the cost of the care that Kaitlyn received. As a result, I believe that the record contains sufficient evidence to have permitted the trial court to have reasonably determined, in the event that it chose to do so and made the necessary factual findings, that respondent-mother's parental rights in Kaitlyn were subject to termination pursuant to N.C.G.S. § 7B-1111(a)(3).

Similarly, I believe that the record contains sufficient evidence to permit a reasonable trial judge to determine that respondent-mother lacked an appropriate child care arrangement for Kaitlyn for purposes of N.C.G.S. § 78-1111(a)(6).[2] Although respondent-mother argues that record contains evidence tending to show

---

[2] Respondent-mother did not contend on appeal that the record lacked sufficient evidence, if believed, to establish that she was "incapable of providing for the proper care and supervision of the juvenile, such that the juvenile is a dependent juvenile" as defined in N.C.G.S. § 7B-101, and that "there is a reasonable probability that the incapability will continue for the foreseeable future." N.C.G.S. § 7B-1111(a)(6). Any such contention would have been unpersuasive given the presence of evidence tending to show that respondent-mother had consistently struggled with serious behavioral issues, including running away, acting disrespectfully toward authority figures, continuously abusing impairing substances, setting fire to a book, and engaging in sexually inappropriate conduct, that resulted in the disruption of numerous placements and Kaitlyn's removal from respondent-mother's care. According to DSS social worker Tara Williams, there had been no change throughout the duration of the proceedings before the trial court relating to respondent-mother's drug use, "sexualized behavior," propensity to run away, failure to cooperate with her case plan, "[a]gressiveness toward adults," or lack of significant effort to regain custody of Kaitlyn. In spite of the fact that respondent-mother had been doing well in the placement in which she resided at the time of the termination hearing, the trial court expressed skepticism that this "[twelve]-week period is sufficient to indicate . . . that there has been a substantial change in behavior and there is not a likelihood of future continued behavior to remove the dependency of the child." As a result, the record contains ample evidence tending to show respondent-mother's incapability for purposes of N.C.G.S. § 7B-1111(a)(6).

that respondent-mother's foster mother and her husband were willing to have Kaitlyn placed with them, that they had space for Kaitlyn in addition to respondent-mother, and that the foster mother's husband had the time to care for Kaitlyn, I am not convinced the presence of this evidence in the record precludes the trial court from finding that respondent-mother lacked an adequate alternative child care arrangement.

As an initial matter, the record suggests that the foster mother's husband smoked cigarettes, a factor that a reasonable trial court might deem disqualifying given the child's relatively young age and the potential health risks associated with second-hand smoke. More fundamentally, given respondent-mother's history of failing to successfully remain in any one placement for a significant period of time and the relative novelty of her placement at the time of the termination hearing, a reasonable trial judge could have serious doubts about the likelihood that respondent-mother's placement with the child in that household would be successful over the long haul. At an absolute minimum, I believe that the record discloses the existence of a genuine issue of fact concerning whether respondent-mother did, in fact, have an adequate alternative child care arrangement sufficient to preclude termination of her parental rights in Kaitlyn pursuant to N.C.G.S. § 7B-1111(a)(6). *See, e.g., In re N.N.B.*, 843 S.E.2d 474, 447 (N.C. Ct. App. 2020) (concluding that, while the respondent's sister "may well be an 'appropriate' placement for a child who does not require" a particularly high level of care, the sister "[was] not an 'appropriate'

placement for [the child] because of his psychiatric needs"). As a result, given that the record contains sufficient evidence that, if believed and set out in proper findings of fact, would support a determination that respondent-mother's parental rights in Kaitlyn were subject to termination pursuant to N.C.G.S. § 7B-1111(a)(3) and N.C.G.S. § 7B-1111(a)(6), I would reverse the trial court's termination order and remand this case to the District Court, Cabarrus County, for the entry of a new order containing proper findings of fact and conclusions of law concerning the issue of whether respondent-mother's parental rights in Kaitlyn were subject to termination pursuant to N.C.G.S. § 7B-1111(a)(3) and N.C.G.S. § 7B-1111(a)(6) and respectfully dissent from the Court's decision to simply reverse the trial court's order with respect to these two grounds for termination.

Justice DAVIS concurs in this concurring and dissenting opinion.

Justice NEWBY dissenting.

I agree with Justice Ervin that, because the trial court failed to make all the necessary factual findings under N.C.G.S. § 7B-1111(a)(6) (2019), the appropriate disposition is to remand for additional findings, not to simply reverse and permanently undo the termination order. But my disagreement with the majority goes deeper. The trial court appropriately found that grounds exist to terminate respondent-mother's parental rights under N.C.G.S. §§ 7B-1111(a)(2) and (a)(3), and it did not omit any necessary factual findings for those grounds. Its order should be affirmed. The majority, by a combination of misguided statutory interpretation and selective review of the facts, reverses the trial court on these well-supported determinations. I respectfully dissent.

First, the majority errs by reversing the trial court's conclusion that grounds existed to terminate respondent-mother's parental rights under N.C.G.S. § 7B-1111(a)(2). That provision states that a court may terminate a respondent's parental rights if it finds that "[t]he parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile." N.C.G.S. § 7B-1111(a)(2). The majority holds that because respondent-mother (who was a minor) and the child, "Kaitlyn," were placed in the same home for foster care for several months, that period of time cannot count towards the required twelve or more

months under the statutory provision. The majority thus interprets the phrase "in foster care or placement outside the home" in subsection 7B-1111(a)(2) to not include time when the minor parent and child are under the same roof, even if during that time the child is neither under the parent's care nor in the parent's home.

That interpretation evades a natural understanding of the statutory provision. Subsection 7B-1111(a)(2) applies when the parent willfully leaves the child in foster care or some other placement outside of the home for over twelve months. *Id.* The majority, quoting *In re A.C.F.*, 176 N.C. App. 520, 527, 626 S.E.2d 729, 734 (2006), notes that the purpose behind this requirement is to "provide[ ] parents with at least twelve months' notice to correct the conditions which led to the removal of their children before being made to respond to a pleading seeking the termination of his or her parental rights." The provision thus helps ensure that for a period of time the child does not reside in the home in which they would typically reside if the parent had full custody and supervision—it gives the parent a chance to get things in order in that home so that perhaps the child could eventually return. Thus, a plain understanding of this provision dictates that it applies when the child is not under the parent's care and not living in the parent's home.

The facts of this case make the analysis under subsection (a)(2) somewhat tricky. Respondent-mother is a minor. For her and Kaitlyn, home was respondent-mother's adoptive parents' home, until they were each removed and placed in foster care. Kaitlyn was placed in foster care from 5 April 2017 at least until the termination

-2-

motion was filed on 8 August 2018. For part of that time, from 9 June 2017 to 19 December 2017, respondent-mother and Kaitlyn were both placed in the same foster home, and then at Church of God Children's Home. After that, respondent-mother was sent elsewhere because of recurring serious behavioral issues. Even during that six-month stretch, though, Kaitlyn was outside of respondent-mother's custody, and no evidence shows that respondent-mother had the responsibility for caring for Kaitlyn during that time. Similarly, neither was Kaitlyn in "respondent-mother's home." She was in the home of a foster family, and then in Church of God Children's Home. Indeed, respondent-mother herself was removed from her home and placed in foster care, so Kaitlyn was not in respondent-mother's home (with respondent-mother's adoptive parents) for as long as both of them were in foster care. Therefore, the evidence shows that from around April 2017 until the filing of the termination motion in August 2018—a period of about sixteen straight months—Kaitlyn resided "in foster care or placement outside [respondent-mother's] home."

Moreover, the majority's contrary holding will create perverse incentives. If the time when both minor parent and child are in the same foster care placement cannot count towards the time in which the child is outside the parent's home, DSS may be unnecessarily encouraged to put minor parents and their children in separate placements. Thus, the trial court's determination that grounds exist to terminate

respondent-mother's parental rights to Kaitlyn under N.C.G.S. § 7B-1111(a)(2) should be affirmed.[1]

Affirming the trial court's conclusion under subsection (a)(2) would be sufficient to uphold the order terminating respondent-mother's parental rights. Nevertheless, I also disagree with the majority's decision to reverse the trial court's determination that grounds exist to terminate respondent-mother's parental rights under subsection (a)(3).

Subsection 7B-1111(a)(3) provides that the court may terminate a parent's parental rights when

> [t]he juvenile has been placed in the custody of a county department of social services, a licensed child-placing agency, a child-caring institution, or a foster home, and the parent has for a continuous period of six months immediately preceding the filing of the petition or motion willfully failed to pay a reasonable portion of the cost of care for the juvenile although physically and financially able to do so.

N.C.G.S. § 7B-1111(a)(3). The majority holds that because, in its view, the trial court order was not sufficiently specific in its findings regarding respondent-mother's earnings and contributions during the six-month period immediately preceding the

---

[1] Because the majority holds that Kaitlyn was not out of the home for over twelve months, it does not consider whether respondent-mother "willfully" left Kaitlyn in such placement or care, or whether reasonable progress has been made to correct the conditions leading to the child's removal. *See* N.C.G.S. § 7B-1111(a)(2). But the record and the trial court's findings abound with evidence that respondent-mother has had recurring issues abusing drugs, engaging in sexually inappropriate behavior, running away, and failing to provide appropriate discipline and nutrition to Kaitlyn, and that any progress on these issues has been limited.

-4-

filing of the termination motion, that court's findings do not support a conclusion that grounds exist under N.C.G.S. § 7B-1111(a)(3) to terminate respondent-mother's parental rights.

I disagree. As the majority notes, the relevant six-month period stretches from 8 February 2018 to 8 August 2018. The trial court specifically found that respondent-mother "worked at Shoe Show as well as Cook Out in 2018 and has not paid any monies towards the cost of care for the juvenile." By broadly referencing the year "2018," the trial court recognized and included all of the appropriate six-month period. Arguably, it also included the month of January 2018, which was outside the relevant six months. But that hardly invalidates the fact that its findings apply to the relevant six months as well. The trial court also found that respondent-mother "is physically and financially able to pay a reasonable portion of the child's care, and thus has the ability to pay an amount greater than zero" but that she "has [not] made a significant contribution towards the cost of care." Again, though the trial court did not specifically say that respondent-mother made no payments during the applicable six-month period, its finding that respondent-mother had not contributed substantially *whatsoever* would include the relevant period.

Overall, the trial court's findings may not go as far as precisely naming the relevant six-month period, but they do encompass that period. The findings are thus sufficient to support the trial court's conclusion that, during the relevant six-month period leading up to the filing of the termination motion, respondent-mother "willfully

-5-

failed to pay a reasonable portion of the cost of care for the juvenile although physically and financially able to do so." N.C.G.S. § 7B-1111(a)(3). The trial court's conclusion that grounds existed to terminate respondent-mother's parental rights under that provision should be affirmed.[2]

Thus, the trial court appropriately found that grounds exist to terminate respondent-mother's parental rights under both N.C.G.S. § 7B-1111(a)(2) and N.C.G.S. § 7B-1111(a)(3). The trial court order should be affirmed on either or both of those bases.

I respectfully dissent.

---

[2] Alternatively, if, as the majority holds, the trial court's findings regarding subsection (a)(3) were somehow technically deficient, I agree with Justice Ervin that the appropriate disposition would be to remand, not to reverse.